UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| TARELL ADAMS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 4:17 CV 1805 DDN |
| | ) | |
| RYAN HILLIS, and | ) | |
| BRANDON ELKINS, | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM AND ORDER**

This matter is before the Court on defendants' motion for summary judgment. (Doc. 53.)  The motion is briefed and ready for decision.  The parties have consented to the exercise of plenary authority by a Magistrate Judge under 28 U.S.C. § 636(c).  For the reasons discussed below, the Court denies the motion.  The Court grants plaintiff's unopposed request, construed as a motion, to voluntarily dismiss defendant Cassie Kobert from the lawsuit and all claims against her (Count V) in the amended complaint.  (Doc. 69 at 1, n.3.)

## I.   BACKGROUND

Plaintiff alleges the following in his amended complaint.  On August 1, 2016, he was incarcerated at Farmington Correctional Center (FCC) in housing unit 5.  He feared that he would be harmed by his cell mate and requested a move to a new cell.  Instead of moving him directly to a new cell, defendants retaliated against him by forcing him to strip search in front of other inmates and prison employees even though he had not engaged in any violent or unusual behaviors or done anything to cause defendants to suspect or believe that he had any contraband.  (Doc. 32 at 4.)

Specifically, defendants took him to a strip cage and ordered him to strip.  He told defendants that he wanted to see a lieutenant because the strip search was improper.  After putting him in the strip cage defendants removed his restraints and demanded that he strip. He refused.  He went to the back of the cage, covered himself with his arms, and refused to comply with defendants' orders.  Defendants then sprayed him four or more times from different locations around the strip cage, first using pepper spray then vapor, and using large cans of spray that were not supposed to be used in a strip cage.  After being sprayed, he complied and stripped.  Defendants then made him spread his legs and bend over while naked in order to humiliate him and retaliate against him while other prisoners were watching, many of whom were sex offenders.  (Doc. 32 at 5.)

Plaintiff filed suit under 42 U.S.C. § 1983, naming as defendants correctional officers Ryan Hillis, Brandon A. Elkins, and Cassie L. Kobert.  In Count I, plaintiff alleges that the strip search was unconstitutional because it was conducted in violation of prison policies and rules.  In Count II, he alleges the manner in which the strip search was conducted, and the manner the pepper spray was used, constituted excessive force.  In Count III, he alleges defendants failed to intervene or protect him against the others' misconduct.  In Count IV he asserts defendants' conduct was in retaliation for exercising his right to move to a new cell.  In Count V he alleges the strip search violated his right to privacy because it was conducted in front of defendant Kobert, a person of the opposite gender.  (Doc. 32 at 6-11.)  Plaintiff sued all defendants in their individual capacities.

Defendants argue plaintiff has no evidence to support his claim that they used excessive force against him when he failed to follow directives.  They argue plaintiff was required to be strip searched according to policy for cell moves and not in retaliation for requesting a cell move.  They contend that because no excessive force was used there was therefore no duty to intervene to protect him.  They argue defendant Kobert did not witness plaintiff without his clothes and plaintiff has no evidence to the contrary.  Finally they argue they are entitled to qualified immunity.


## II.     DISCUSSION

Summary judgment is appropriate "[i]f there is no dispute of material fact and reasonable fact finders could not find in favor of the nonmoving party." *Shrable v. Eaton Corp.*, 695 F.3d 768, 770-71 (8th Cir. 2012); *see also* Fed. R. Civ. P. 56(a).  The party moving for summary judgment must demonstrate the absence of a genuine issue of material fact and that it is entitled to judgment as a matter of law.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).  The burden then shifts to the non-moving party to demonstrate that disputes of fact exist only after the movant has made its showing.  *Id.*  It is the nonmoving party's burden to proffer specific factual support by affidavit or other evidence to avoid summary judgment.  *Perry v. Martin*, 2013 WL 6331474, at *1 (E.D. Mo. Dec. 5, 2013).

**Strip Search and Retaliation Claims - Counts I and IV**

Defendants argue the strip search was constitutional because it was conducted pursuant to prison policy regarding cell moves, specifically Post Order 31, which they say mandates a strip search every time a cell move is made, and not in retaliation for requesting a cell move.  "[A] convicted inmate has rights under the Fourth Amendment against unreasonable searches of his body."  *Story v. Foote*, 782 F.3d 968, 971 (8th Cir. 2015). Nevertheless, "[l]awful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system."  *Goff v. Nix*, 803 F.2d 358, 362 (8th Cir. 1986) (quoting *Pell v. Procunier*, 417 U.S. 817, 822 (1974)).  In other words, a prisoner has a far lower expectation of privacy than most other individuals.  *Id.* at 365.

To that end, visual body cavity searches on prison inmates are not per se unreasonable.  *Id.* at 360, 371 (sustaining constitutionality of visual body cavity searches undertaken when prisoners moved outside their housing units or left the confines of the penitentiary).  *See also Franklin v. Lockhart*, 883 F.2d 654, 656-57 (8th Cir. 1989) (stating that because legitimate security concerns provided justification, the twice-daily visual body cavity searches conducted by prison officials did not violate either the Fourth or Eighth Amendments).  "Where there is no substantial evidence that the manner of the search is an exaggerated response to the perceived security concerns…wide-ranging deference [is

3

given] to prison officials on matters concerning institutional security." *Franklin*, 883 F.2d at 657.

The test of reasonableness under the Fourth Amendment is not capable of precise definition or mechanical application.  In each case it requires a balancing of the need for the particular search against the invasion of personal rights that the search entails. Courts must consider the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it is conducted.  Bell v. Wolfish, 441 U.S. 520, 559 (1979).  Generally, strip searches should be conducted in an area as removed from public view as possible without compromising legitimate security concerns. *E.g., Franklin v. Lockhart*, 883 F.2d at 656-57.  Strip searches conducted in an abusive fashion "cannot be condoned."  *Bell,* 441 U.S. at 560.

 Defendants provide various reasons or no reason at all for the need to strip search plaintiff.  Plaintiff was issued a conduct violation (CV) following the August 1, 2016 search.  The CV dated August 1, 2016, does not state a reason for the need for the strip search.  (Doc. 69-14.)   An August 10, 2016 memo from the warden also does not state a reason for the strip search. (Doc. 69-14.)  Defendants state the strip search was mandated by prison policy, i.e., Post Order #031.  (Doc. 58-1.)  Defendant Elkins testified at his deposition that plaintiff was strip searched because he was fidgeting and moving around, and he thought he might have contraband.  (Doc. 69-3, Elkins Dep. at 6.)  He also testified that since he searched plaintiff's property, it made sense to search him, too.  (Doc. 69-13, Elkins Dep. at 15.)  Defendant Kobert testified at her deposition that she was told prisoners needed to be strip searched upon a cell change but she could not recall ever seeing a written policy to that effect.  (Doc. 69-4 at 2.)  Plaintiff testified at his deposition that he overheard defendant Elkins state prior to the search that "[s]ince he thinks he's so tough, I want to see his butt and show the wing his buttocks."  (Doc. 69-5, at 18.)

Here questions of fact remain as to the reasons for the strip search and whether it was justified.  Defendants' reasons, and plaintiff's account, create a genuine dispute of material fact that is appropriate for decision at trial.  Therefore, all counts concerning the reason or justification for the search are denied summary judgment.

4

5

**Use of Force and Failure to Protect Claims - Counts II and III**

Defendants contend that no excessive force was used.  Therefore there was no duty to intervene to protect him.  They assert that while there was an objective need for the spontaneous use of force, it was not excessive.  They argue plaintiff disobeyed multiple verbal orders to strip and that his refusal to submit to the orders created the need for use of force.  They argue the amount of force was reasonable, plaintiff suffered minimal to no injury, and plaintiff posed a security threat through his combative behavior.

The Eighth Amendment forbids the "unnecessary and wanton infliction of pain" constituting cruel and unusual punishment.  *Hudson v. McMillian*, 503 U.S. 1, 9-10 (1992).  *See also Burns v. Eaton*, 752 F.3d 1136, 1138 (8th Cir. 2014) ("After incarceration, only the unnecessary and wanton infliction of pain constitutes cruel and unusual punishment forbidden by the Eighth Amendment").  When a prison official is accused of using excessive physical force in violation of the Eighth Amendment, the core judicial inquiry is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm."  *Jackson v. Gutzmer*, 866 F.3d 969, 974 (8th Cir. 2017).  The factors to be considered in determining whether force was used in good faith include "the need for the application of force, the relationship between the need and the amount of force that was used, and the extent of injury inflicted."  *Whitley v. Albers,* 475 U.S. 312, 321 (1986).

Here, defendant Hillis testified at his deposition that following the incident plaintiff's shirt was covered with pepper spray and that he had "never seen anybody get hit with so much pepper spray."  He testified that defendant Kobert was so overcome by the vapors that she needed to run out of the wing doors even though she had been standing approximately 12 feet from the strip cage where plaintiff was being sprayed.  (Ex. 69-7. Hillis Dep. at 18-20.)  In his deposition, plaintiff testified that he incurred a burn to his back from the spray, causing his skin to peel and that he was given Neosporin to treat it. He stated he has suffered anxiety and depression from the event.  (Doc. 69-5, at 14.)

The parties' distinctly different accounts create a clear dispute of material fact that must be decided at trial. Therefore, all counts containing use of force issues are denied summary judgment.

In addition to protecting inmates from the unnecessary and wanton infliction of pain, the Eighth Amendment imposes upon prison officials the obligation to restore control in tumultuous situations. *Buckner v. Hollins*, 983 F.2d 119, 121 (8th Cir. 1993). As such, under § 1983, a correctional officer can be held liable for failing to intervene in another officer's constitutional violation. *See Putman v. Gerloff*, 639 F.2d 415, 423 (8th Cir. 1981) (determining that a deputy could be held "jointly liable for failing to intervene if a fellow officer…was using excessive force and otherwise was unlawfully punishing the prisoner"); and *Buckner*, 983 F.2d at 121-22 (determining that a state corrections officer had a duty to intervene on behalf of inmate being assaulted by a county corrections officer). "A prison official acts with deliberate indifference to an inmate's safety when the official is present at the time of an assault and fails to intervene or otherwise act to end the assault." *Williams v. Mueller*, 13 F.3d 1214, 1216 (8th Cir. 1994).

For the same reasons stated in its use of force discussion, the Court finds that genuine issues of material fact exist that are appropriate for trial with respect to plaintiff's failure to protect claims. The Court therefore denies summary judgment on all claims alleging failure to protect.

**Qualified Immunity**

Defendants finally argue they are entitled to qualified immunity. Officials only enjoy qualified immunity if they act in good faith, i.e., that a reasonable officer would not have known that his actions violated the Constitution; therefore, qualified immunity does not apply to discretionary acts done in bad faith or with malice. *White v. Jackson,* 865 F.3d 1064, 1074 (8th Cir. 2017). Bad faith "ordinarily contains a requirement of actual intent to cause injury." *Id*. Plaintiff here points to the alleged violation of the clearly established right to be free from the use of excessive and unreasonable force, and the allegations listed above plausibly suggest that plaintiff's right to be free from such force was allegedly violated.

7

The previously discussed allegations support an inference of bad faith. Accordingly, defendants' argument lacks merit and defendants are not entitled to qualified immunity.

### III.   CONCLUSION

For the reasons stated above,

**IT IS HEREBY ORDERED** that defendants' motion for summary judgment (Doc. 53) is **DENIED.**

**IT IS FURTHER ORDERED** that plaintiff's unopposed request to voluntarily dismiss defendant Cassie Kobert from this action and his claim for invasion of privacy contained in Count V is **GRANTED.**

**IT IS FURTHER ORDERED** that a Zoom status conference to discuss further proceedings is set for **April 29, 2021 at 1:30 p.m.  Go to zoomgov.com and enter the ID and password: Meeting ID: 160 599 0218 Password: 346672**

　　　　　　　　　　　/s/     David D. Noce
**UNITED STATES MAGISTRATE JUDGE**

Signed on March 30, 2021.